IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WHITE CAP, LP, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:23-CV-2001-N |
| | § | |
| DANIEL MCSPADDEN, RONALD | § | |
| NELSON, PHIL SCHROEDER, AND | § | |
| SOUTHERNCARLSON, INC., | § | |
|     DEFENDANTS. | § | |

**FINDINGS CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 66, before the undersigned for findings a recommended disposition is *Defendants' Motion for Order to Show Cause*, Doc. 90. For the reasons detailed herein, the motion should be **DENIED**.

## I. PROCEDURAL HISTORY

Plaintiff is primarily engaged in the business of marketing, selling, and distributing supplies and equipment and related services for professional contractors. Doc. 1 at 5. For a time, Plaintiff employed Defendants Nelson, McSpadden, and Schroeder (the "Individual Defendants") but they ultimately decided to work for one of Plaintiff's competitors, Defendant SouthernCarlson, Inc. ("SCI" and, collectively, "Defendants"). Doc. 1 at 8-9. Plaintiff alleges that Defendants thereby harmed its business, so it brought suit under the federal Defend Trade Secrets Act and the Texas Uniform Trade Secret Act in addition to claims for civil conspiracy, unfair competition, tortious interference with prospective business relations, breach of fiduciary

duty, and the like.[1]  Doc. 1 at 21-35.  Plaintiff ultimately seeks damages as well as injunctive relief to prevent Defendants from utilizing its "confidential, proprietary, and trade secret information for any purpose."  Doc. 1 at 36-37; Doc. 5.

Following expedited briefing, the district judge denied Plaintiff's emergency motion for a temporary restraining order, finding that there was no immediate threat of irreparable injury.  Doc. 23.  The Court further stated that it would consider Plaintiff's application for a preliminary injunction on the papers and directed the parties to confer regarding an expedited discovery schedule, including "staged filing of evidence, identification of and limitations on the number of affiants/declarants, and briefing."  Doc. 23 at 2.  On receipt of the parties' scheduling proposal, the Court entered a *Scheduling Order for Expedited Discovery and Preliminary Injunction Briefing*, directing discovery to commence immediately and establishing briefing deadlines.  Doc. 34 at 1-2.  The Court then ordered the parties to confer about a forensic review protocol and, if no agreement was reached, present their respective proposals.  Doc. 34 at 3.  On November 7, 2023, the Court partially granted Plaintiff's *Motion for Entry of a Forensic Protocol Order* (the "Identification Order") and separately entered a *Stipulated Order Regarding Protocol for Forensic Inspections of Individual Defendants' Devices and Accounts* (the "Protocol Order").  Doc. 51; Doc. 52.

As relevant here, the Protocol Order required the Individual Defendants to deliver their respective "Repositories"[2] to a forensic examiner to "make forensically sound images and

---

[1] Plaintiff recently moved for leave to amend its complaint to add a claim against SCI for tortious interference with contractual relations.  Doc. 118.

[2] The Protocol Order defines "Repositories" as "devices that the Individual Defendants may have used to store information or communicate relating to their work for White Cap, or that contain or

collections of the [Devices] and Media (the "Images") using industry-standard tools and methods, and perform all analyses using the Images." Doc. 52 at 5. Following the creation of the Images, the examiner was to apply specified search terms to the file content, and Plaintiff was also directed to provide the examiner with a list of hash values for known files for purposes of the examination. Doc. 52 at 6.

      The Protocol Order then provides that (1) the examiner would generate a report showing potential information of Plaintiff's on the Devices; (2) the resulting "reports and data" would be provided to Defendants to determine whether any information should be withheld on grounds that the information contains personal data concerning the Individual Defendants, confidential information belonging to third parties, or privileged information; (3) when the "forensic information or reports" were provided to Plaintiff, the Individual Defendants would serve a log supporting their respective assertions of privacy, confidentiality, or privilege over any requested redactions; (4) after receiving the examiner's report, the parties could agree to narrow or broaden the search terms; (5) to the extent any of Plaintiff's information was located on the Devices, the Individual Defendants were to transmit the Devices to the examiner on the first Saturday following completion of the foregoing steps; and (6) upon receiving the parties' consent, the examiner would irretrievably delete Plaintiff's information from the Devices. Doc. 52 at 6-7. Finally, the Protocol Order specified that the examiner would "maintain a confidential copy of the Images until Final Resolution of this litigation." Doc. 52 at 5. Contending that Plaintiff has intentionally obstructed the forensic protocol by directing the examiner not to complete the work

---

potentially may contain White Cap Information." Doc. 52 at 3. The Court will use the term "Devices" in its place.

required by the Protocol Order, Defendants now request that the Court hold Plaintiff in civil contempt.  Doc. 91, *passim*.

## II.  APPLICABLE LAW

The civil contempt power is limited because it "uniquely is liable to abuse."  *Matter of Highland Capital Mgt., L.P.*, 98 F.4th 170, 174 (5th Cir. 2024).  Thus, the "primary purpose" of civil contempt sanctions cannot be to punish the contemnor or vindicate the court's authority.  *Id.* (citation omitted).  Rather, the purpose of such sanctions must be "remedial, and for the benefit of the complainant."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (quotation and citation omitted).  Civil contempt sanctions must be designed either to (1) coerce the contemnor into compliance with a court order or (2) compensate another party for the contemnor's violations.  *Matter of Highland Capital Mgt., L.P.*, 98 F.4th at 174.

A party moving for civil contempt must show by clear and convincing evidence that (1) a court order was in effect; (2) the order required certain conduct; and (3) the opposing party failed to comply with the court order.  *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009); *see also Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (holding that the proper evidentiary standard is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case.") (quotation omitted).

## III.  ANALYSIS

Defendants assert that the parties have complied with paragraphs 1 through 20 of the Protocol Order in that the examiner's search term report is complete.  Doc. 91 at 14; Doc. 92-1 at 3 (Tugan Decl.).  Paragraph 21 permits the parties to then "agree to iteratively narrow or broaden

4

the search terms," which they did. Doc. 52 at 7; Doc. 98-1 at 5. Defendants argue that Plaintiff is nevertheless obstructing paragraph 22 of the Protocol Order which states:

> *To the extent any White Cap Information is located on the Images*, the Individual Defendants will transmit the Repositories to the Examiner on the first Saturday following the completion of the procedures described in Paragraphs 16-21. *Upon receiving consent of all Parties, the Examiner shall irretrievably delete identified White Cap Information* by forensically wiping the data.

Doc. 52 at 7 (emphasis added).

In particular, Defendants assert that Plaintiff has declined to comply with the provisions emphasized above in that it (1) will not identify which of its information the examiner should delete from the Devices; and (2) refuses to consent to the deletion of Plaintiff's data therefrom. Doc. 91 at 14-15; *see also* Doc. 92-1 at 43 (A. Read email stating that the examiner needed "(1) confirmation of which files constitute White Cap Files and (2) the Parties' instruction to move forward" with the next section of the Protocol Order.). Instead, Defendants contend, Plaintiff has unilaterally instructed the examiner to cease all work on the forensic protocol. Doc. 91 at 15. Defendants thus request that the Court (1) require Plaintiff to appear and demonstrate why it should not be held in civil contempt for failure to comply with the Protocol Order; (2) impose a coercive fine for every day Plaintiff refuses to comply therewith; and (3) award Defendants their attorneys' fees and costs incurred in obtaining Plaintiff's compliance. Doc. 91 at 17-18.

Plaintiff responds that, following receipt of the examiner's report, it requested that the examiner send Plaintiff "all of the files that Defendants reviewed, aside from the ones they marked as privileged." Doc. 98 at 6; Doc. 98-1 at 11. Defendants, however, instructed the examiner not to provide the non-privileged files to Plaintiff. Doc. 98 at 7; Doc. 98-1 at 9-10. As a result, on February 8, 2024, Plaintiff informed Defendants that the forensic protocol was complete for purposes of expedited discovery and preliminary injunction briefing and proposed

5

that the parties work together on an amended scheduling proposal. Doc. 98 at 7; Doc. 98-1 at 12. Plaintiff asserts that, without seeing the documents, it cannot identify its information on the Devices, discover how Defendants may have unlawfully used such information, or prepare its motion for a preliminary injunction. Doc. 98 at 4, 13. Instead, Defendants are essentially requesting that the Court permit the spoliation of evidence by permitting deletion of the information from the Devices before Plaintiff reviews it. Doc. 98 at 4, 14-15.

Putting aside for the moment the issue of whether Plaintiff is entitled to substantively review the non-privileged documents,[3] which will likely involve further motion practice, the Protocol Order requires both parties to consent before the examiner is permitted to delete Plaintiff's information from the Devices. Doc. 52 at 7. Because the language is permissive, the Court cannot find by clear and convincing evidence that Plaintiff violated the Protocol Order by declining to consent to the examiner deleting its information from the Devices.[4] *Whitcraft*, 570 F.3d at 271; *see also Walling v. Crane*, 158 F.2d 80, 83 (5th Cir. 1946) (noting that a party may

---

[3] There is disagreement among the parties on this point. The Protocol Order states that "[n]othing in this Order shall be understood as permitting White Cap to review the substantive files identified by the Examiner (defined below)." Doc. 52 at 2. Nevertheless, it became evident at the hearing on the instant motion that Defendants had reviewed the files, which would seem to conflict with a separate provision in the Protocol Order. *See* Doc. 52 at 5 ("*The Examiner shall not provide access to the Repositories or Images to White Cap, Defendants, or any third party at any point* (except that the Examiner may return the Repositories to Individual Defendants' outside counsel as set forth in this Order), and shall provide information from the Repositories or Images to White Cap and Defendants only in accordance with the terms of this Order.") (emphasis added).

[4] It is unclear why Plaintiff wants Defendants to have continued access to its claimed confidential information and trade secrets despite the Devices having been imaged. Nevertheless, absent further guidance from the district judge to the contrary, it is Plaintiff's prerogative to withhold its consent to deletion of the files.

6

be held in civil contempt when it refuses to do "an affirmative act *required* by the provisions of a *mandatory* order") (emphasis added).

## IV. CONCLUSION

For the reasons set forth above, *Defendants' Motion for Order to Show Cause*, Doc. 90, should be **DENIED**.

**SO RECOMMENDED** on May 31, 2024.

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).